IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE    * MDL Docket No. 2004
     4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS    *
     Case No.
LIABILITY LITIGATION    * 4:14-cv-26 (Rickman)

_____

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Elizabeth Rickman was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Mrs. Rickman brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Mrs. Rickman also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Her husband Douglas asserts a loss of consortium claim. Mentor seeks summary judgment on all of the Rickmans' claims, contending that they are time-barred under Georgia law. As discussed below, the Court disagrees and denies Mentor's summary judgment motion (ECF No. 32 in 4:14-cv-26).

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Mrs. Rickman sought treatment from Dr. Lionel Meadows for stress urinary incontinence. Dr. Meadows implanted Mrs. Rickman with a TVT sling implant in 2004. A few days after the surgery, Mrs. Rickman developed an abscess at her TVT implant site, so Dr. Meadows removed the TVT. Dr. Meadows recommended a replacement sling, and he implanted Mrs. Rickman with ObTape on August 20, 2004. Dr. Meadows visually inspected the ObTape before implanting it in Mrs. Rickman, and he did not believe it had a manufacturing defect. Meadows Dep. 159:21-160:21, ECF No. 33-3.

In November 2005, Mrs. Rickman sought treatment from Dr. Louis Fernandez because she had begun experiencing vaginal discharge with blood. Dr. Fernandez diagnosed Mrs. Rickman with

a vaginal cyst.  Dr. Fernandez did not conclusively identify the cause of the cyst, but he believed it may have been related to a foreign body, such as Mrs. Rickman's ObTape or a suture. Fernandez Dep. 67:18-68:11, ECF No. 33-4.  After the initial treatment for the cyst, Mrs. Rickman continued to have symptoms. In December 2005, Dr. Fernandez recommended exploration of the cyst and potential removal of Mrs. Rickman's ObTape.  During the surgery, Dr. Fernandez discovered an abscess and removed part of Mrs. Rickman's ObTape.  Mrs. Rickman had a follow-up appointment in January 2006, and Dr. Fernandez believes he told her that ObTape may have been involved in her abscess.  *Id.* at 40:3-18. Mrs. Rickman understood that Dr. Fernandez had removed part of her ObTape.

Neither Mr. Rickman nor Mrs. Rickman investigated whether ObTape might be defective.  Mrs. Rickman asserts that she did not suspect that ObTape may be defective or that it was related to her injuries until 2013.

DISCUSSION

The Rickmans filed their action in this Court on January 29, 2014 under the Court's direct filing order.  The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint."  Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004.  The

Rickmans live in Georgia, and all of Mrs. Rickman's ObTape-related treatment took place in Georgia. The parties agree that Georgia law applies to the Plaintiffs' claims.

Under Georgia law, a plaintiff must bring a personal injury action "within two years after the right of action accrues." O.C.G.A. § 9-3-33. Under Georgia's discovery rule, "a cause of action accrues when a plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof." *Waters v. Rosenbloom*, 490 S.E.2d 73, 75 (Ga. 1997). As the Court previously observed, Georgia's discovery rule, as interpreted by a panel of the Court of Appeals for the Eleventh Circuit and thus binding on this Court, is unique because the statute of limitations does not begin to run until "the plaintiff knows, or through the use of reasonable diligence should have discovered, two distinct facts: the nature of his injury . . . [and] the causal connection between the injury and the alleged negligent conduct of appellee." *Bergin v. Mentor Corp.*, Case No. 4:13-cv-135, 2016 WL 3049491, at *1 (M.D. Ga. May 27, 2016) (alterations in original) (quoting *Welch v. Celotex Corp.*, 951 F.2d 1235, 1236 (11th Cir. 1992)). Under the Eleventh Circuit's interpretation of Georgia law, "the running of the statute of limitations" is tied "to the plaintiff's knowledge of the" defendant's "wrongful conduct." *Id.* Thus, "the Georgia statute of limitations begins to run when the

plaintiff knew, or with reasonable diligence should have known, of facts giving notice of an actionable claim, *i.e.*, a causal connection between plaintiff's injuries and wrongful or actionable conduct." *Id.*[1]

Mentor contends that the Rickmans knew or should have known that ObTape was connected to their injuries by January 2006 because that is when Dr. Fernandez told Mrs. Rickman that he had to remove a portion of her ObTape to treat her abscess. The Court agrees on this point. But under Georgia's unique discovery rule, simply knowing of a connection between a product and an injury is not enough; the statute of limitations did not begin to run until the Rickmans knew or should have known of a connection between a product *defect* and their injuries. Mentor contends that Mrs. Rickman should have known, as a matter of law, that such a connection existed before 2013. In other words, Mentor asserts that every reasonable person in Mrs.

---

[1] The Court observes that the Eleventh Circuit's interpretation of the Georgia discovery rule is broader than the application of the discovery rule in most states that this Court has encountered in this MDL proceeding. According to the Eleventh Circuit, the statute of limitations begins to run when the plaintiff should have tied her problems to some "wrongful" conduct by the defendant, whereas in other states, the statute of limitations begins to run when the plaintiff should have associated her problems with the product that she ultimately claims is defective even though at the time she did not have reason to believe that the product was defective or that the defendant had acted wrongfully. The Court is not completely convinced that the Eleventh Circuit's interpretation of Georgia law is consistent with the Georgia Supreme Court's interpretation of the Georgia discovery rule, but the Court is bound to apply this Eleventh Circuit precedent until it is reconsidered by the Eleventh Circuit.

Rickman's position would have researched ObTape to determine whether it might be defective and that every reasonable person would have discovered at that time that ObTape might be defective.   In support of this contention, Mentor points out that several women filed ObTape lawsuits against Mentor in 2007, that the Judicial Panel on Multidistrict Litigation created this multidistrict proceeding regarding ObTape in 2008, that there was one article and one editorial regarding ObTape in the *New York Times* during 2009, and that other plaintiffs in this MDL read articles about problems with mesh slings as early as 2006.

The Court, however, is not convinced that the Rickmans failed to exercise reasonable diligence *as a matter of law*. Rather, the Court finds that there is a fact dispute on this issue.   First, no doctor told Mrs. Rickman that ObTape might be defective, and Mentor did not point to any evidence that a doctor would have suggested to Mrs. Rickman that ObTape was defective if she had asked.   The evidence suggests that if Mrs. Rickman had asked Dr. Meadows whether ObTape had a defect, he would *not* have told Mrs. Rickman that ObTape had a design defect or a manufacturing defect.   And Mentor did not point to any evidence suggesting how Dr. Fernandez would have responded if Mrs. Rickman had asked him whether ObTape had a defect.   Thus, even if the Court were to conclude that every reasonable person in Mrs. Rickman's situation would have investigated her

6

potential claim by asking her doctors in 2006 whether ObTape was
defective, there is no evidence in the present record that Mrs.
Rickman's doctors would have suggested to her that it was.

Second, it is true that the Rickmans did not conduct
independent research regarding ObTape—the second type of mesh
sling that was connected to an abscess in Mrs. Rickman's body.
But the Court declines to hold that a patient lacks reasonable
diligence, as a matter of law, if she fails to conduct
independent research regarding a potential product defect months
or years after being told of a possible connection between the
product and her injuries.

In summary, while a jury could conclude that the Rickmans
should have done more in 2006 to investigate their potential
claims—and that a 2006 investigation would have yielded enough
information to put them on notice of a potential defect in
ObTape—a jury could also reach the opposite conclusion.  The
Court thus finds that a genuine fact dispute exists on when the
Rickmans' claims accrued under Georgia's unique discovery rule.

CONCLUSION

As discussed above, Mentor's summary judgment motion (ECF
No. 33-1 in 4:14-cv-26) is denied.  This action is ready for
trial.  Within seven days of the date of this Order, the parties
shall notify the Court where in Georgia venue is proper.  The
Court notes that Mrs. Rickman stated in her Plaintiff Fact Sheet

7

that she is a resident of Carnesville, Georgia, which is in Franklin County, in the Middle District of Georgia – Athens Division. Lewis Decl. Ex. E, Suppl. Mentor Georgia Plaintiff Fact Sheet § III.3 (June 29, 2016); 28 U.S.C. § 90(b)(1). Her ObTape surgeries took place in Commerce, Georgia (Jackson County) and Toccoa, Georgia (Stephens County), which are in the Northern District of Georgia – Gainesville Division. Suppl. Mentor Georgia Plaintiff Fact Sheet § II.4; *id.* § II.6; 28 U.S.C. § 90(a)(1).[2]

IT IS SO ORDERED, this 12th day of December, 2016.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[2] The undersigned is authorized to sit in any district court in the State of Georgia. Therefore, he intends to try this case when it is determined where in Georgia it should be tried. Since the Athens Division is within the Middle District, that District would be the most convenient for the Court.